UNITED STATES DISTRICT COURT    ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES

       -against-    MEMORANDUM
    AND ORDER
DARIN DEMIZIO,    08-CR-336 (JG)

       *Defendant*
-----------------------------------------------------------x

A P P E A R A N C E S :

    BENTON J. CAMPBELL
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    By:   Winston Y. Chan
        Kelly T. Currie
        Winston Paes
        *Attorneys for the United States*
        *of America*

    SPEARS & IMES LLP
        51 Madison Avenue
        New York, NY 10010
    By:   David Spears
        Charlita Mays
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

      I write briefly to explain my decision to deny defendant Darin Demizio's motions under Fed. R. Crim. P. 29 and 33. The following assumes general familiarity with the facts and circumstances of the case.

A.    *Sufficiency of the Evidence*

      There was ample evidence for a reasonable jury to find that the conspiracy charged in the indictment, rather than multiple different conspiracies, existed. The testimony of

the government's four cooperating witnesses, if believed, easily established that the conspiracy charged in the indictment existed and continued beyond the limitations period. Similarly, the testimony of Special Agent Ryan, coupled with that of Robert Johnson, would enable a reasonable jury to convict Demizio of the false statement count.

B.  *Refusal to Charge*

Demizio asked me to instruct the jury as follows:

> It is your decision whether the deprivation of the intangible right of honest services in this case involves bribery and kickbacks. . . .  As discussed earlier, however, if you find that these incidents constitute self-dealing ones, then the government must prove that these incidents could have caused detriment to the employers.

Def.'s Proposed Jury Instructions 17.  I refused to do so.

A party is entitled to a specific instruction on his theory of the case only if, *inter alia*, there is evidence to support it.  In this case, Demizio argued that the fraud alleged involved self-dealing, while the government argued that the fraud involved kickbacks rather than self-dealing.  Demizio argues that this distinction has legal significance because if the fraud involves self-dealing, the government must also prove that the fraud "could have caused detriment to the employers."  *Id.*

Assuming *arguendo* that this legal argument is correct, Demizio was not entitled to an instruction along these lines because he failed to identify any evidence in the record that could permit a jury to find that this was a self-dealing case.  The Second Circuit has suggested that a self-dealing defendant "typically causes his or her employer to do business with a corporation or other enterprise in which the defendant has a secret interest."  *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003).  Although *Rybicki* does not define "secret interest," the

2

self-dealing cases it identifies generally involve fraud by an employee who steers his employer's business to firms in which the defendant has a legal ownership interest. Thus, *Epstein v. United States*, 174 F.2d 754 (6th Cir. 1949) is described as a case where the defendants "allegedly had secret *ownership* interests." *Rybicki*, 354 F.3d at 140. In *United States v. McCracken*, 581, F.2d 719 (8th Cir. 1978), the defendant steered his employer's business to firms "in which he had an interest unknown to his employer," *Rybicki*, 354 F.3d at 140, and the *McCracken* opinion flatly states that defendant and his cohorts "were owners and officers" of these firms. *McCracken*, 581 F.2d at 720. The defendant in *United States v. Von Barta*, 635 F.2d 999 (2d Cir. 1980) caused "his employer to extend credit to an undercapitalized investment fund in which the defendant secretly owned a half interest." *Rybicki*, 354 F.3d at 140.

In proposing the instruction at issue, Demizio did not argue that the record showed that he had such a cognizable interest in the firms to which he steered his employer's business. Instead, the "Defendant argued that a self-dealing analysis was more appropriate in this case since the government alleged that the Defendant's relatives were getting paid for doing no work while the defense countered that the relatives actually did work for Morgan Stanley and that their services provided value to the firm." Def. Mem. 2. However, I see no way in which a finding that defendant's relatives provided value to the firm would enable the jury to find that Darin Demezio had secret interest in the firms that employed his relatives. More importantly, defendant failed to suggest, either during the charge conference or in his instant motion, how any of the evidence in the record would support a finding that Demizio had a "secret interest" in these firms, as that term is used in *Rybicki*. In some sense, of course, Demizio had an interest in these firms insofar as they generated kickbacks for his relatives, but if the "secret interest"

language in *Rybicki* is read this broadly, any distinction between kickback cases and self-dealing cases would collapse.

Demizio also suggests that this is a self-dealing case because the government argued in summation that it involved a conflict of interest. There is language in *Rybicki* suggesting that self-dealing cases involve "conflicts of interest" while kickback cases do not. *Rybicki*, 354 F.3d at 142 ("As noted, in self-dealing cases, unlike bribery or kickback cases, there may also be a requirement of proof that the conflict caused, or at least was capable of causing, some detriment-but that is of no moment with respect to the case at bar, which involves secret payments, not conflicts of interest."). Although it is not clear what exactly the *Rybicki* court meant by "conflict of interest," it clearly was not referring broadly to any tension between the interests of the employer and the interests of the employee. Here as well, a reading of *Rybicki* along the lines suggested by Demizio's argument would erase any distinction between kickbacks and self-dealing, because *every* honest services fraud involves such a conflict:

> [W]e conclude . . . that the term "scheme or artifice to deprive another of the intangible right to honest services" in section 1346, when applied to private actors, means a scheme or artifice to use the mails or wires to enable an officer or employee of a private entity . . . *purporting to act for and in the interests of his or her employer . . . secretly to act in his or her or the defendant's own interests instead* . . . .

*Id.* at 142 (emphasis added). Every fraud case, including the kickback scheme at issue in *Rybicki*, involves a conflict of interest in that every individual has a personal interest in pocketing a kickback while every employer has an interest in hiring people who eschew such conduct. As a result, the *Rybicki* court's insistence that that case did not involve "conflicts of interest" is only coherent if the court was referring to situations where the defendant has conflicting legal duties, rather than a situation where the employee's duty of loyalty to his

4

employer chafes with his abstract desire to seek gain for himself or his intimate associates. In the former circumstances, requiring a finding of potential detriment might make sense: if an individual has two potentially conflicting duties but is able to fulfill both in a particular self-dealing transaction, the lack of disclosure may be an insufficient basis to find his behavior criminal. *Cf. Epstein*, 174 F.2d at 768 ("Certainly, a mere disclosure of interest could not convert an actual fraud with a wrongful purpose to injure or deceive, into an honest, moral transaction with a purpose to benefit."). Demizio does not offer an interpretation of "conflict of interest" that would enable a jury to find such a conflict here but no such conflict under the facts of *Rybicki*. As a result, the mere fact that the government made an off-hand reference to "conflicts of interest" during summation, Tr. 1337, does not force the conclusion that my refusal to give the proposed instruction was error.

I declined to give the requested instruction because "it seems clear to me, seeing how the case was tried, that the Government hasn't alleged that the defendant steered Morgan Stanley's business to firms in which he had an undisclosed ownership interest." Tr. 1385. This language was imprecise. The fundamental problem with the proposed charge was that there was no *evidence* in the record to suggest that the defendant steered Morgan Stanley's business to firms in which he had an undisclosed ownership interest. The problem, then, was not that the government failed to allege that self-dealing occurred, but that there was no basis in the record from which the defendant could argue that self-dealing occurred.

I note also that the holding of *Rybicki* is that "in self-dealing cases, unlike bribery or kickback cases, there *may also be* a requirement of proof that the conflict caused, or at least was capable of causing, some detriment." 354 F.3d at 142. Thus, under the law of the Second

5

Circuit, it may be appropriate to require such a finding in some cases. Demizio has failed to suggest any reason why this is such a case. Accordingly, his motion for a new trial on this ground is denied.

C.      *Refusal to Admit a Statement from a Government Brief*

As a general matter, "[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981). Like other admissions of a party-opponent under Fed. R. Evid. 801(d)(2), they do not implicate the rule against hearsay, and are admissible subject to generally applicable rules involving, *e.g.*, relevance and potential for unfair prejudice or confusion.

The Second Circuit has never directly addressed the admissibility at trial of statements made in a pre-trial brief. However, it has considered statements made in a bill of particulars and opening statements made to a jury by defense counsel in a previous trial. Although concluding that such statements are not inadmissible *per se*, the Second Circuit has, for policy reasons, expressed an unwillingness "to subject such statements to the more expansive practices sometimes permitted under the rule allowing use of admissions by a party-opponent." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984).

Many of these concerns are implicated by the statement offered by defendant. Demizio analogizies the government's statement to a bill of particulars. This analogy is unconvincing. "A bill of particulars is a statement of what the government will or will not claim in its prosecution." *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991). The statement at issue here from the government's brief is merely an assertion about the contents of

the indictment, and the indictment itself is "the charge of a grand jury" rather than a statement by the government. *Id.* at 1261 (internal quotation marks omitted). Indeed, the government had no duty to provide a bill of particulars in this case, as the defendant failed to persuade me that "the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Under these circumstances, Demizio's attempt to use the government's brief in opposition to a bill of particulars as the evidentiary equivalent of a bill of particulars seems "unfair" and "likely to deter counsel from vigorous and legitimate advocacy." *United States v. McKeon*, 738 F.2d 26, 32 (2d Cir. 1984). *See also United States v. Purdy*, 144 F.3d 241, 246 (2d Cir. 1998) ("To bind the Government forever to a preliminary investigative theory to which it never formally committed would only discourage further investigation and thereby impede the truth-finding process.").

Furthermore, even if the contents of legal memoranda, rather than formal pleadings, are treated no differently than other proposed party admissions, I would refuse to admit the proffered statement under Fed. R. Evid. 401 and 403. At the threshold, I fail to see how the government's alleged change of theory during the trial is relevant to any factual issue submitted to the jury. Furthermore, assuming the government's theory did change during trial, I fail to see how the statement offered proves this fact. The statement does not "set forth the government's theory of wrongdoing," Def. Mem. 7, it sets forth the government's interpretation of the indictment. And any probative value provided by this interpretation is substantially outweighed by a risk of confusion of the issues. The statement would be relevant only if the jury

7

were to decide whether there was an impermissible variance between the indictment and the proof at trial. That task was not the province of the jury.

D. *Agent LoMonaco's Notes*

I see no reason to upset my conclusion that Demizio failed to lay the foundation for the admission of the notes as a present sense impression during the cross-examination of Special Agent Ryan. Furthermore, any potential error did not prejudice Demizio. He was able to elicit the substance of the notes during his examination of LoMonaco. More importantly, the relevant portion of the notes, which did not contain a verb in any tense, were minimally probative on the issue of whether Demizio responded to a question phrased in the present or past tense.

## CONCLUSION

For the foregoing reasons, Demizio's motions are denied.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
      July 20, 2009